IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

TRUSTEES OF THE NATIONAL           *
AUTOMATIC SPRINKLER INDUSTRY
WELFARE FUND, *et al.*,                *

    Plaintiffs,               *          Civil No. TDC-24-0470

v.                       *

ALL SAFE FIRE SPRINKLER SYSTEMS,  *
INC.,
                       *
    Defendant.
              *     *     *     *     *     *

**REPORT AND RECOMMENDATION**

    This Report and Recommendation addresses the Motion for Entry of Default Judgment ("Motion") (ECF No. 8) filed by Plaintiffs Trustees of the National Automatic Sprinkler Industry Welfare Fund, Trustees of the National Automatic Sprinkler Local 669 UA Education Fund, and Trustees of the Sprinkler Industry Supplemental Pension Fund (collectively, the "Funds"). Defendant All Safe Fire Sprinkler Systems, Inc. ("All Safe") has not responded, and the time for doing so has passed. *See* Loc. R. 105.2(a). On July 3, 2024, in accordance with 28 U.S.C. § 636 and pursuant to Local Rule 301.6(al), Judge Chuang referred this case to me for a report and recommendation on the Funds' Motion. ECF No. 11. I find that a hearing is unnecessary. *See* Fed. R. Civ. P. 55(b)(2); Loc. R. 105.6. For the reasons set forth below, I respectfully recommend that the Funds' Motion be granted.

**I.    FACTUAL AND PROCEDURAL HISTORY**

    In this case, the Funds filed suit against All Safe under the Employee Retirement Security Act of 1974, as amended, ("ERISA"), 29 U.S.C. §§ 1132 and 1145, and Section 301 the Labor-Management Relations Act, 29 U.S.C. § 185(a), to recover amounts owed to the Funds under a

Collective Bargaining Agreement ("CBA"). ECF No. 1. All Safe executed a waiver of service on February 29, 2024, acknowledging that it had received a copy of the complaint and agreeing to waive service, but All Safe did not file an answer or responsive pleading by the response deadline. ECF No. 5; *see* Fed. R. Civ. P. 4(d)(4). On May 21, 2024, the Funds moved for the Clerk's entry of default (ECF No. 7), and the Clerk entered default against All Safe the next day (ECF No. 9). All Safe has not responded to the Funds' Motion for Default Judgment (ECF No. 8), and the Motion is ripe for decision.[1]

## II.    LEGAL ANALYSIS

### A.    Standard for Entry of Default Judgment

In determining whether to award a default judgment, the Court accepts as true the well-pleaded factual allegations in the complaint as to liability. *See Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780-81 (4th Cir. 2001); *United States ex rel. Durrett-Sheppard Steel Co. v. SEF Stainless Steel, Inc.*, No. RDB-11-2410, 2012 WL 2446151, at *1 (D. Md. June 26, 2012). Nonetheless, the Court must consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law. *Ryan*, 253 F.3d at 780. Although the Fourth Circuit has a "strong policy that cases be decided on the merits," *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir. 1993), default judgment "is appropriate when the adversary process has been halted because of an essentially unresponsive party." *S.E.C. v. Lawbaugh*, 359 F. Supp. 2d 418, 421 (D. Md. 2005). If the Court determines that liability is established, the Court must then determine the appropriate amount of damages. *CGI Finance, Inc., v. Johnson*, No. ELH-12-1985, 2013 WL 1192353, at *1 (D. Md. March 21, 2013). The Court does

---

[1] Pursuant to the Servicemembers' Civil Relief Act ("SCRA"), before the Court may enter a default judgment in favor of a plaintiff, the plaintiff must file an affidavit "stating whether or not the defendant is in military service and showing necessary facts to support the affidavit[.]" 50 U.S.C. § 3931(b)(1)(A). Because All Safe is a corporation, this requirement does not apply.

not accept factual allegations regarding damages as true, but rather must make an independent determination regarding such allegations. *Durrett-Sheppard Steel Co.*, 2012 WL 2446151, at *1.

Rule 55 of the Federal Rules of Civil Procedure provides that "[i]f, after entry of default, the Plaintiff's Complaint does not specify a 'sum certain' amount of damages, the court may enter a default judgment against the defendant pursuant to Fed. R. Civ. P. 55(b)(2)." A plaintiff's assertion of a sum in a complaint does not make the sum "certain" unless the plaintiff claims liquidated damages; otherwise, the complaint must be supported by affidavit or documentary evidence. *United States v. Redden*, No. WDQ-09-2688, 2010 WL 2651607, at *2 (D. Md. June 30, 2012). Rule 55(b)(2) provides that "the court may conduct hearings or make referrals . . . when, to enter or effectuate judgment, it needs to . . . determine the amount of damages." The Court is not required to conduct an evidentiary hearing to determine damages and may rely on affidavits or documentary evidence in the record to determine the appropriate sum. *See, e.g.*, *Mongue v. Portofino Ristorante*, 751 F. Supp. 2d 789, 795 (D. Md. 2010).

### B.     Liability

ERISA provides that "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement." 29 U.S.C. § 1145. ERISA further provides that employers who fail to make timely contributions are liable in a civil action for unpaid contributions, interest on the unpaid contributions, liquidated damages, reasonable attorney's fees and costs, and any other relief the Court deems appropriate. 29 U.S.C. § 1132(a), (g).

The following facts are taken from the Complaint (ECF No. 1), the Funds' Memorandum in support of their Motion (ECF No. 8-1), and the exhibits attached thereto. The Funds allege that

3

they are multiemployer employee pension benefit plans within the meaning of 29 U.S.C. § 1002(3). ECF No. 1 ¶ 2. The Funds are established and maintained pursuant to the provisions of the Restated Agreements and Declarations of Trust ("Trust Agreements") and the CBA between Road Sprinkler Fitters Local Union No. 669 ("the union") and All Safe. *Id.*

On November 17, 2016, All Safe entered into a Transitional Agreement with the union. ECF Nos. 8-3 at 1 & 8-4. Under the Transitional Agreement, All Safe agreed to be bound by the terms and conditions of the CBA (ECF No. 8-5) between the National Fire Sprinkler Association ("NFSA") and the union. In March 2021, the NFSA and the union entered into an Agreement extending the terms of the CBA through March 31, 2025. Under the CBA, All Safe was required to submit reports and pay contributions to the Funds for each hour of work by journeymen and apprentice sprinkler fitters employed by All Safe through March 31, 2025. ECF Nos. 8-3 at 1-2 & 8-6.

Under the CBA, All Safe was also bound to the Trust Agreements. ECF Nos. 8-3 at 2, 8-7, 8-8 & 8-9. Among other things, the Trust Agreements provide that the Trustees of the Funds may adopt rules and procedures concerning payments to the Funds, audits, liquidated damages, and to enforce the collection of delinquent contributions. ECF No. 8-3 at 2. Under the authority delegated to them by the Trust Agreements, the Trustees of the Funds adopted the Guidelines for Participation in the Sprinkler Industry Trust Funds ("Guidelines"). *Id.*; ECF No. 8-10. A copy of the Guidelines was mailed to All Safe, along with a letter explaining their purpose. ECF No. 8-3 at 2.

All Safe employed certain employees covered by the CBA between January 2020 through the time that the Complaint was filed. ECF No. 1 at 3. Although it was bound to contribute to the Funds for its covered employees, All Safe failed to do so for the months of January 2024 through

April 2024.[2] ECF Nos. 1 at 3 & 8-3 at 3. And it also failed to submit the required report forms for these months. *Id.*

The Funds also conducted an audit of All Safe's books and wage records for January 1, 2020, through June 2023. ECF No. 8-3 at 5. Under the CBA, the Trust Agreements, and the Guidelines, All Safe was required to produce all of the records requested by the Funds' auditor. *Id.* But All Safe only provided some of the requested wage and payroll records for January 2020 through June 2023, so the Funds were only able to conduct a partial audit. *Id.* The partial audit revealed that All Safe owed the Funds $131,478.09 for the period of January 2020 through June 2023. *Id.*; *see also* ECF No. 8-12.

Accepting as true the unchallenged allegations of the Complaint, along with the evidence that the Funds submitted in connection with its Motion to show that All Safe was bound by the terms of the CBA, Trust Agreements, and the Guidelines, I find that the Funds have established All Safe's liability for its failure to make timely reports and pay timely contributions required by the CBA and Trust Agreements.

### C.    Damages

Having determined that the Funds have established All Safe's liability, it is now appropriate to determine the damages to which the Funds are entitled. The damages the Funds seek in their Motion are appropriate under Rule 54(c) so long as "the record supports the damages requested." *See Laborers' Dist. Council Pension v. E.G.S., Inc.*, No. WDQ-09-3174, 2010 WL 1568595, at *3 (D. Md. Apr. 16, 2010). Here, the Funds have provided sufficient evidence to support their claim for damages in the amount of $256,752.82.

---

[2] The Complaint alleges that All Safe failed to make the required contributions for the months of October 2023 through January 2024. ECF No. 1 at 3. But after the Complaint was filed, All Safe made its contributions for October through December 2023. ECF No. 8-3 at 2.

In support of their claim for damages, the Funds rely on the Declaration of Anna E. Bosmans, the Assistant Fund Administrator of the Funds. ECF No. 8-3. Ms. Bosmans explains that the Trust Agreements provide that when an employer is two or more months delinquent in making required contributions and submitting reports, the Funds are authorized the project the delinquency amount using a formula:

> Where an Employer is two or more months delinquent in making the contributions required on behalf of his Employees and has not submitted the required documents showing the Employees who worked for him and the hours worked, the Trustees may project as the amount of the delinquency the greater of (a) the average of the monthly payments or reports submitted by the Employer for the last three (3) months for which payments or reports were submitted, or (b) the average of the monthly payments or reports submitted by the Employer for the last twelve (12) months for which payments or reports were submitted.

ECF No. 8-7 at 26; *see also* ECF Nos. 8-8 & 8-9.

Using this formula, the Funds calculated All Safe's average delinquent monthly contributions to be $19,194.50. ECF No. 8-3 at 3. Multiplying this average monthly amount ($19,194.50) by the number of months for which All Safe was delinquent (four months) yields $76,778.00, which is the estimated contributions that All Safe owes the Funds. ECF Nos. 8-3 at 4 & 8-11. In addition, All Safe owes the Funds $131,478.09 for delinquent contributions revealed during the Funds' partial audit.

The Trust Agreements and the Guidelines require employers who are late making contributions to pay liquidated damages and interest. ECF Nos. 8-3 at 4 & 8-7 at 24; *see also* ECF Nos. 8-8 & 8-9. Because All Safe was late in making contributions for the months of September 2023 and delinquent in making its contributions for January 2024 through April 2024, the Funds calculate that All Safe owes liquidated damages in the amount of $17,534.00 and interest in the amount of $2,260.12. ECF Nos. 8-3 at 4-5 & 8-11. And for the delinquent contributions for January

2020 through June 2023 uncovered by the Funds' partial audit, the Funds calculate that All Safe owes liquidated damages in the amount of $26,295.62.

The Funds also seek an award of attorney's fees and costs, which are available in ERISA cases, 29 U.S.C. §1132(g)(2), and which are allowed under the Trust Agreements and Guidelines. *See* ECF No. 8-1 at 2.

When a court enters judgment for the plaintiff in an ERISA action for a plan to recover unpaid contributions, it "shall award the plan . . . reasonable attorney's fees and costs of the action, to be paid by the defendant." *Id*. In calculating an award of attorney's fees, the court must determine the lodestar amount, defined as a "reasonable hourly rate multiplied by hours reasonably expended." *Grissom v. The Mills Corp.*, 549 F.3d 313, 320-21 (4th Cir. 2008). The Fourth Circuit has stated that a court's

> discretion should be guided by the following twelve factors: (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 243 (4th Cir. 2009). In addition, Appendix B to this Court's Local Rules ("Rules and Guidelines for Determining Attorneys' Fees in Certain Cases") provides that lawyers admitted to the bar for twenty years or more may reasonably bill $300-475 per hour. Paralegals and law clerks may reasonably bill $95-150 per hour. These rates serve as guidelines in determining the reasonableness of hourly rates.

The Funds rely on the Declaration of Charles W. Gilligan to support their request for an award of attorney's fees and costs. ECF No. 8-13. Mr. Gilligan states that he has been a member

of the bar since 1986. He charged an hourly rate of $360.00 for legal work performed before April 1, 2024, and $374.00 for legal work performed after April 1, 2024. He charged an hourly rate of $150.00 for paralegal work. These rates are presumptively reasonable under Appendix B to the Local Rules and I find them to be reasonable here. Mr. Gilligan spent 12.25 hours working on this case, *see* ECF No. 8-14, which I find to be reasonable. The Funds also incurred $405.00 for the filing fee. ECF No. 8-15. I recommend that the Court award the Funds the requested attorney's fees in the amount of $2,002.00 and costs in the amount of $405.00.

In summary, I recommend that the Court grant the Funds' Motion for Default Judgment (ECF No. 8), enter judgment in favor of the Funds and against Defendant All Safe Fire Sprinkler Systems, Inc., and award $256,752.82 in damages to the Funds, plus interest at the rate of 12% *per annum*[3] on the unpaid contributions through the date of payment, calculated as follows:

| | |
|---|---|
| $208,256.09 | Delinquent contributions |
| $43,829.61 | Liquidated damages |
| $2,260.12 | Interest |
| $405.00 | Costs |
| $2,002.00 | Attorney's fees |
| **$256,752.82** | **Total** |

## III.   CONCLUSION

For the reasons set forth above, I recommend that the Court grant the Funds' Motion for Default Judgment (ECF No. 11), enter default judgment in favor of the Funds and against Defendant All Safe Fire Sprinkler Systems, Inc., and award damages to the Funds in the amount

---

[3] This is the interest rate specified in the Trust Agreements and Guidelines. ECF Nos. 8-7 at 37; 8-8 at 37; 8-9 at 37 & 8-10 at 6.

of $256,752.82, plus interest at the rate of 12% *per annum* on the unpaid contributions through the date of payment, against Defendant All Safe Fire Sprinkler Systems, Inc.

The Clerk of Court shall mail a copy of this Report and Recommendation to Defendant All Safe Fire Sprinkler Systems, Inc.

Objections to this Report and Recommendation must be served and filed within 14 days, pursuant to Fed. R. Civ. P. 72(b) and Local Rule 301.5(b).


October 15, 2024                                   _____/s/_____
Date                                                     Timothy J. Sullivan
                                                         Chief United States Magistrate Judge